## BALLIET et al. v. WALTON.

No. 19290.  Opinion Filed Sept. 24, 1929.

Rehearing Denied Oct. 15, 1929.

J. E. Falkenberg and W. H. C. Taylor, for plaintiffs in error.

Simons, McKnight, Simons & Smith, for defendant in error

RILEY, J.  The object of this suit was to vacate a deed executed by Francis Marion Walton, deceased, to his son, Roy Walton, conveying a farm located in Grant county. Pearl Balliet and Oliver Walton, daughter and son of deceased, were plaintiffs below. The ground alleged was that the grantee, Roy Walton, procured said deed from his aged and infirm father by means of duress, fraud, and misrepresentation. Judgment was for defendant, and plaintiffs appeal. The trial court made an extensive recitation of the evidence, together with findings of fact and conclusions of law, a part of which we quote:

"Did the defendant in this case by fraud, misrepresentation, duress, intentionally and knowingly procure the deed to the land? That is the only question in it. * * * Even the sister and brother that have testified here * * * have not given this court a single word of testimony to show that the brother, Roy Walton, forced the father to sign the deed or that he begged him to do it or that he demanded it or anything of that kind. Not one of them, nobody. * * * apropos of that, on the other side, disinterested people, neighbors, old acquaintances have come and testified * * * that the defendant's father, or the deceased, Francis M. Walton, had said he would deed the land to the defendant, and the defendant said: 'Well, I don't want the land.' That is the only testimony we have. * * * The deceased father and this defendant, his son, lived on a very, very cheap farm for a number of years down here on the Salt Fork. * * * The truth is that when they got ready to leave that land, the father and

the son, he borrowed money and put a mortgage on that land. Then you come in here and try to show that this defendant stole all the crops that were raised and appropriated them to his own use, etc. * * * He had to get off that land in order to live and pay his debts. * * *

"The evidence does not disclose that the other son or daughter ever gave one penny to this poor old man during his lifetime, not one penny. * * * He finally had a decent suit that he was buried in. Who furnished it? It was this defendant. He had a monument erected at his grave after his death, a good one too. He paid $600 for it. Did you folks furnish it? No. The defendant did. It was the desire of the father that his brother be buried by him in the cemetery lot with him. He was buried there. Did you folks do it? No. who did it? The defendant. Who paid the expense? The defendant. One of the brothers was unfortunate. His father had helped him in some manner, in a financial way, in the sum of $500 or $600, and still owed it at the time of the father's death and for a number of years; no interest was paid and it became necessary to pay that debt and the old gentleman mortgaged the farm. Whose farm? Mortgaged the father's farm. Who paid the mortgage? It was the defendant. Why sure it was. In his last sickness, who paid the doctor bills? You know it made me feel badly for you to come in and testify that he wanted to increase his bill and show that he, the defendant, had paid out more money. The doctor himself, who honestly came on the witness stand said: 'Yes, he wanted me to give him a receipt for all the money he paid, but it was not to make it appear that the defendant wanted to pad his bill against the old gentleman.' The doctor swore: 'Yes, he paid me money time after time and many times and nearly every time he would get any money he would pay me some and I couldn't remember and I didn't make any record of it, but he didn't want me to pad it.' Who paid those bills? Not you people who are seeking this land, but it was the defendant.

"I will tell what I think, good people; that you had a good father. He wanted to pay his debts. He paid every security debt that he was on as far as this evidence shows. He helped one of his sons and I think he was one of the younger of the family. This son, this defendant, has been good to him and the father made his home with this son, the defendant, all of these years, and he had paid out this money. He said he was not ready to die and he couldn't pay out and he wanted to die with a good name and he wanted his debts all paid. That was in his mind and in his heart. He says to Roy: 'Pay up all of my debts so that I may die without owing any man anything and with a good reputation and you take this farm now.' It was a big undertaking for the defendant.

"The court does not hesitate to find from the evidence in this case that the defendant was worsted $500 to $1,000 by having taken the land and assumed the obligations. I don't know of a business man in my acquaintance who would assume such an obligation. I wouldn't do it. I don't think any attorney here would do it and foot all of those bills. That wouldn't make any difference. If he actually paid out this money and if there had been no deed given and if there had been no contract and he would have died intestate and if there had been no wife —just eliminate it all—and he died intestate with all of those debts and his brother or either or either of you had paid these expenses, the proper thing for you to have done and the legal thing for you to have done would have been to file claims against his estate and they would have taken up the value of this land. There would have been no hopes for you folks anywhere along the line under such conditions. He is not ahead. He has lost money, the same as you have. * * * The court finds from the evidence in this case that the plaintiffs are daughter and son of Francis M. Walton; that Francis M. Walton owned and possessed 117 acres of land in the southern part of Grant county, Okla., lying along the Salt Fork river; that said land is of a sandy nature and only a part of it can be used for agricultural purposes; that said land is worth about $3,000; from the evidence introduced in this case. It is not the court's judgment by any means, but it is in evidence in this case that the land is worth about $3,000; that the deceased Frank M. Walton made his home with the defendant, Roy Walton; that the defendant is a son of the deceased, Francis Marion Walton; that the deceased, Francis Marion Walton, made his home with the defendant for many years; that at the time of his death, Francis Marion Walton was something like 82 years of age; that several months prior to the death of the deceased, he sustained a broken leg and other diseases and complications set in; that he was declining in strength of body for a number of months prior to his death; that he was unable a number of months before his death to do any work of any importance, and, perhaps, for many years, save and except to do choring, as old men of his age generally do; that the deceased had become in debt; that he borrowed money and had a mortgage on his land amounting to the sum of $1,000; that he had no other property of any importance excepting the land in qeustion; that when the mother of the defendant, or the deceased's wife died, the defendant also paid the funeral expenses and doctor bills of the deceased mother, amounting to about $800 or better; that the deceased saw that he had no property outside of the land, with which to pay funeral expenses in the event of his death; that this was upon his mind and he wanted to arrange for his death,

and for the payment of all funeral expenses; that he conceived in his own mind the thought or proposition that if the defendant in this case would assume all his indebtedness and pay these obligations that he owed, that he would deed him the land; that he did this of his own volition, of his own mind, and submitted the proposition to other people before it was ever submitted to the defendant; in fact, he never submitted the proposition himself to the defendant until after the negotiations were all had and agreements had been made; that at the time this deed to the son, the defendant, Roy Walton herein, his mind was clear; he knew what he was doing, it was his intention to do it and he did the right thing in the judgment of this court; that there was no duress, nor fraud, nor force, nor undue influence used upon the deceased in order to get him to make this deed; that it was done, as the court has said, voluntarily on the part of the deceased;

"The court further finds from the evidence in this case that the defendant has carried out not only the spirit of the contract, but that he has carried out all of the provisions of the contract; that he has up to this time paid out about $700 more than the real value of the land, saying nothing about board and other expenses that he has been to that he made no charge for; that he had no help whatsoever from anybody else in caring for the father.

"Conclusion of Law.

"As a conclusion of law, the court finds that the deed is regular in form and was made freely and voluntarily by the deceased; that it is legal; that it carries and conveys the title to that land to the defendant and was so intended by the grantor."

It is first contended on appeal that there was no meeting of the minds of the parties at the time of the execution of the deed in controversy. From a review of the evidence we find and hold that this assignment of error is without merit.

It is contended that the trial court erred in admitting evidence, over objections of plaintiffs, as applied to a contemporaneous agreement—which was not acknowledged before a notary public or recorded. The contract or agreement specified the desires of deceased, in consideration of which the deed was executed, but by the terms thereof it was expressly provided that the same was "no lien upon the real estate conveyed by warranty deed executed and delivered this day," but that compliance with the terms of the contract was to be left "entirely to the honesty and integrity of my son, Roy Walton." The same was signed and witnessed and properly identified as well as fully executed by defendant. We find no error in its admission in evidence. Acknowledgement or recording are not conditions precedent to the admission of such instruments in evidence. The deed was absolute by its terms, and remained so by the terms of the contract, considered as a part of it.

It is next contended that "independent advice concerning the transaction" for the benefit of the grantor was essential to the validity of the deed under the circumstances here presented. But from our review of the evidence we hold the trial court was justified in finding that grantor was fully capable and that he understood and comprehended the transaction in detail. It is urged the trial court erred "in excluding the medical testimony offered by plaintiffs and in excluding Frank Walton's testimony." Rule 26 of this court requires the rejected testimony to be abstracted in the brief. Yet, without harsh application of the rule and from a review of the testimony and offered testimony of the witness, we find no reversible error. The same is true as to rejected medical testimony as contained in plaintiffs' exhibit 4, and as to the rejected testimony of Frank Walton, a son.

We have considered "other errors assigned" and grouped on page 30 of plaintiffs in error's brief, and find them without merit. The judgment is affirmed.

MASON, C. J., LESTER, V. C. J., and CLARK, HUNT, HEFNER, and SWINDALL, JJ., concur.

CULLISON, J., disqualified.

ANDREWS, J., absent, not participating.